Good morning. My name is Mary Pogalis. May it please the Court, I am here speaking on behalf of Duron Kincaid, who has appealed the denial of his habeas petition in the District Court. Unlike the case you just heard, I would submit that this one is pretty much 100 percent about the facts and the record in the trial court. It's about the totality of the circumstances, whether they were inquired into, whether they were considered, whether the failure to do that was unreasonable. Ferretta, at bottom, for the issues involved here, is about the facts, the totality of circumstances. So is the California Supreme Court's history on this in Wyndham and in their recent decision in People v. Lynch. It's what this Court did in Farias. There are a number of red flags here that tell you, factual red flags, that the approach taken by the trial court and the State appellate court was so unreasonable that it merits the granting of this writ. The first and most important is that the trial court simply refused, or at least firmly avoided, inquiring into the totality of circumstances, nonetheless, to consider them. And the court of appeal, when it allowed that very abbreviated set of facts to control its decision, acted just as unreasonably because it did so on a woefully inadequate record as to the issues of timeliness that Ferretta directs it to continue. Now, the I think point directly to the rationality or lack of rationality of the State court's action. Roberts. Counsel, have you alleged ineffective assistance of counsel in this case? Ferretta. No. Roberts. Okay. So nobody disputes that he was represented by competent counsel during the trial. Ferretta. He raised that issue, and I think it was raised in the district court. It is not before this Court on appeal. The issue here was that he was competently represented. And that seems to be the understanding of the trial judge. The trial judge actually asked counsel about the allegations that Mr. Kincaid made, about whether he had investigated certain witnesses, looked at certain evidence that Mr. Kincaid wouldn't have looked at. There were some things there I think that Mr. Kincaid learned when he had the colloquy with the judge about his Ferretta rights that he didn't know before about the preparations that have been made in his case. The question here, then, doesn't revolve around whether there was any inadequacy in his counsel. The question, then, strictly is, on the eve of trial, was Mr. Kincaid effectively denied his Ferretta rights because the judge wouldn't grant him a continuance? Yes.  This was at least one week before jury selection even began. It was two weeks before a jury was empaneled. And one of the red flags that I'm ready to point you to is all of the other continuances that were granted with apparently no problem by the trial court in the sum, I guess it had been about a year since the first trial date. Some of them, I can refer you to the excerpts of record. One, at excerpt of record 68, was granted on four days' notice. Two of them were granted on a one-week notice before the day that trial was supposed to begin. These were requests by the prosecutor because of a vacation, because his investigator wasn't available. These were requests by defense counsel because he was in trial. Do we have a change in judge? Judges here? I think that many of these went just through the regular calendar, ready to be assigned out for trial. It appears that the judge who conducted the Ferretta hearing with Mr. Kincaid was new to the case. Yes. And at one point he tells Mr. Kincaid, my understanding from Judge so-and-so was that this case was trial ready. I think that's true. I'm just saying, in this trial court, four days, one week, two weeks, were not considered untimely periods to ask for a continuance of the trial. But it seems that your real claim isn't the Ferretta claim. It is the failure to grant a continuance. Well, there's you could come down on either side here. The timeliness issue has been was created by the court of appeal. It did not happen in the trial court, timeliness as to Ferretta. That's a word of art. It has a special meaning. It refers to whether this request was abused. It was an abuse of his right to self-representation or it was being misused to disrupt, to some serious way disrupt the court proceedings or delay the trial. There is no evidence whatsoever that that was Mr. Kincaid's motive or purpose. He had a very legitimate statement, not that his counsel was in effective, that's not on the record in the Ferretta hearing, but that he had lost his confidence in his attorney. And that was not an unreasonable position for him to have reached. His attorney had been very tied up in other trials. He didn't know. They had no meetings or very few except in the courtroom. Mr. Kincaid had been waiting, waiting, waiting for reports, for information, and he wasn't getting them. And now here he was, still not getting them, still not meeting with his attorney except in the courtroom. And he got very scared. Roberts. Counsel, you're here on EDPA and in grading the papers of the California State Courts, we're only entitled to grant the writ if we can find that they violated something that was clearly established by the U.S. Supreme Court. Yes. With respect to the question of the timeliness, that is, the question as to whether a continuance should have been granted here, do you have any Supreme Court cases that deal with the question of a continuance? Well, yes. Actually, I think it's 80 years' worth of Supreme Court authority from Powell v. Alabama, where the Supreme Court said it is vain to give the accused a day in court with no opportunity to prepare for it. That's the law. It has been repeatedly recognized by this circuit. I would refer you to pages 14 and 15 of the opening brief, Armand v. Marquez. In other words, you – your view is that this is really not a Feretta case as such. It is a case simply about the continuance. I think that – I don't know quite how to put this. I can't step away from the timeliness because the court of appeal did that. It created it when there was nothing in the record. But in fact, the Feretta request was granted. In my opinion, it was granted and should have been, because there was no question that this was a timely request. Had it not been timely, the trial judge would have found that. But there were many reasons, and I can go through them. Yes, he said you can represent yourself, but I'm not going to give you any time to prepare. And this Court has directly found that taking that position on the law is simply as a matter of constitutional law, a denial of the meaningful right to represent yourself. That's Ferias. That's Ferias. Now, I understand that's a direct appeal from the district court. However – And under AEDPA, we're confined to looking at Supreme Court cases, so you'll have to give me a Supreme Court case, I think. Well, I gave Powell v. Alabama 80 years' worth of litigation. You cannot force a defendant – Powell was not – did not involve an exercise. Did not, but it stayed at the principle of law. It is vain to give the accused a day in court with no opportunity to prepare for it. One of the things the trial court pointed out at the time in his reluctance to grant the continuance was that the alleged murder was, at that point, nearly 2 years old. Well, the murder may have been. The prosecution was barely a year and a half into it. The first trial had been set a year before. As I said, several continuances for way less serious cause were granted, so the prosecutor could take a vacation. Were there any continuance granted between the time of the Feretta hearing and the calling of the – for jury selection? No. And importantly, the trial court never even asked Mr. Kincaid, how much time do you need? He never even asked the prosecutor, is this going to be a problem for you? There is nothing to suggest – all of the witnesses, almost all of the witnesses were local police. The handful of informants that were involved were on supervision or in custody, readily available. All the testimony had been preserved. Do you know what day of the week this – the Feretta hearing was held? Because the trial court refers to it, it says, I've got a – I have a – I have a – you know, I've got jurors coming in on Monday. Well, the jury didn't – the jury was not – Vaudier didn't begin for another week, I know that. So it must have – so perhaps it was – I can't tell you. I would have to look. I'm sorry for that. I'm just checking to see if in my factual background I've included the day of the week. It's – it was October 15th, but I – of 2001, but I don't know. I'm sorry, of 2002, but I don't know. Would it have been obvious to Mr. Kincaid at the time that he would have had whatever period between the time of his Feretta hearing and the point that the judge had said, look, I've got a jury coming in on Monday, whatever that period is, let's say it's 10 days or 12 days, if it's – if it means – doesn't mean the first – the next Monday, it means the Monday after that. Would that have been obvious to Mr. Kincaid in context of the week to prepare? I don't know, but you know what the trial judge said to him was, are you ready to go right now, to – right now? He was not prepared to give him – he made it clear he was not going to give him even a day. From the get-go, it was right now. He would have had to have given him time, because there wasn't anybody to call for the jury. I agree, but that wasn't even on the table with this judge. But, in fact, they were in the middle of pretrial motions. They were. They had to have represented himself, presumably he would have taken those over. I mean, in other words, you – so it was now, in fact. Yes. It was going to be right now. Why exactly does it matter when the trial is going to begin? The question is, there was something going on at that moment, which – and he was trying to take over at that moment, as I understand it. You know, he could – It may not have been a trial, but it was pretrial motions and then voir dire and so on. I see I have about a minute left. Go ahead. Actually, you don't have a minute left. You are on the other – the downside. You're over. So I will give you a minute. Oh, am I? Oh, my gosh. Why don't I give you 30 seconds to answer my question, please? Okay. So let me – I was looking at the clock. And can you repeat what? Yes. The question is, as I understand it, he – there were proceedings going on at that time. Yes. And he wanted to depose his lawyer then. So it is only the trial that would have had to be continued, but either he was going to take over then in terms of the pretrial motions or everything was going to have to be kicked out. Well, he didn't need to take over right then. Those hearings could have been continued. The hearing on the statements was done. They were getting ready to move on to something else. That's what I'm saying. There could have been a gap there. There was no jury. There was no reason for this except that the trial judge did not want delay or inconvenience. And that is not good enough to throw Ferretta and the right of self-representation out the door. Thank you very much. May it please the Court. I'm Catherine Rivlin from the California Attorney General's Office representing the Respondent in this case. I can answer Your Honor's question. It was a Tuesday, October 15th. And so we're talking about six days, basically. We've got a jury coming in here on Monday, as stated on Tuesday. And that actually raises an interesting question, because even if my opposing counsel is sort of correct that what matters is exactly when the court is seated as opposed to, I mean, when the jury is seated as opposed to when it's, you know, the jury selection process, the voir dire, begins, it was seated a week after that. And so if what we're talking about is the standard of Ferretta weeks before the beginning of trial, even if what that means is a sworn jury, we're talking about 13 days. And I think that's a week plus some days. It's not at all clear to me that there's even a dispute here, really. Because I don't think that's weeks. I think that's within weeks. I think that's week. And it's not, you know, a clear violation or misapplication of Ferretta to find that something less than two weeks is less than weeks. But, in fact, do you read the district court's ruling as being that this was an untimely request, or it actually granted it, and then said, but I'm not going to give you a continuum? I think it was a conditional grant. And I think we've got cases both in California and the Federal courts which say that a conditional grant where the condition is going to impact the ability to self-defend is tantamount, I think is the word most people say, tantamount to a denial. So I think what we have here is, yes, an untimely request which was conditionally granted, and that conditional grant is really a denial. I think that's why we're within the Ferretta context. There's a lot of discussion in the California Court of Appeals opinion of the Moore opinion.  Yes. And is it your understanding that that opinion sets out the parameters for an understanding of what Ferretta meant? I think it's what we had at the time. But in terms of what the Ninth Circuit believed, I think there's two very interesting points about what the California courts did with Moore. Moore says if we're applying Ferretta, the standard is exactly what Ferretta says, which is weeks before trial. Moore has been criticized a little bit for having applied sort of the wrong part of AEDPA, but basically it makes a useful determination about that by telling us what to apply for Ferretta. But the interesting part, factually, about Moore, the California Court of Appeals went back and looked at the published California Supreme Court opinion in People v. Moore and figured out what those dates that this Court used in Moore really meant and that March date that was weeks after the request was in fact the same date we're talking about here, the date when the jury was to show up for voir dire. So it's our position that Moore v. California, in fact, supports Respondent's position. The ultimate question or the conceptual question, it seems to me, is when the Ferretta law talks about delay, does that mean a request made for purposes of delay or does it mean the practical consequences of delay and it can be denied for that reason? I think it means both, Your Honor. And part of that is because it's very hard to tell which you've got in any given situation. The gamesmanship around Ferretta, because it's such a dangerous situation, it's a per se reversibility if you guess wrong, is very intense. And so they've set a point beyond which the court simply has discretion to grant or deny as long as that discretion is not abused. And if that means that jury questionnaires have gone out in a special circumstances case and the jury's coming back for voir dire on Monday, the court has some ability to manage its own courtroom and decide that is simply too late to throw everything out the window and start again. He's got concerns, and the court looked into those concerns. Mr. Kincaid had concerns about whether certain things had been done by counsel. And as they went through them item by item, these things had been done, they just hadn't had an opportunity because of other trials that counsel was doing to discuss that. But witnesses that Mr. Kincaid wanted contacted had been contacted, and a drug residue test on the victim had been completed. And there, I think there was at least one other test and another witness that had been contacted. And they were in custody somewhere else, and all of those things that Mr. Kincaid was concerned about, it just turned out that he hadn't been reported back. They had been done. So what the court was faced with is Mr. Kincaid wants to take this over because he thinks things aren't being done, these things have been done, and counsel is ready, and it's just Mr. Kincaid who would not be ready, essentially. And that is well within this Court's discretion to manage its calendar in court and get this special circumstance killing case underway. Kennedy. Counsel, wouldn't those circumstances also support the trial judge's decision to refuse a continuance? In other words, if these things had already been done by the defendant's counsel, then presumably that he was he would receive the benefit of that work and he could be ready for trial in a week. I would agree with that, Your Honor. The circumstances are the circumstances, and they apply however this case is viewed, whether as a forensic case or a continuance case. I will note that the Court issued its certificate of appealability on the forensic question, I guess, with reference, again, to the two cases, the Farias case and the Milton v. Moore's case that are discussed in the briefs. I'm sorry. I didn't hear that. The Court issued its certificate of appealability really on the forensic question. That's what was preserved below, which I think explains why the briefing is focused on that. Well, the question is whether, I think the relationship between the failure to grant the continuance and the exercise of the Feretta rights is that the failure to grant the continuance informed the defendant's decision about whether he wanted to exercise his Feretta rights. They're not independent. I don't think counsel is out of bounds by talking to us about continuance, especially when I raised it. Right. I don't see the question as sort of independent here. No, I don't either, Your Honor. And so there's really almost three interrelated questions here. One is, you know, was it a timely request under Feretta? Was it granted or denied? And was it then withdrawn afterwards once it became clear that a continuance of more than a week would not be granted? Is there something else? I believe, unless there are questions from the Court, we're willing to submit. Thank you. Thank you very much. The case is submitted. Kincaid v. Reynolds is submitted.
judges: Berzon, Bybee, Cjj Graham (S. Ohio), Dj